IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ALICE R. PETZOLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-07-325-HE |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| Commissioner, Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Alice Petzold seeks judicial review of a denial of benefits by the Social Security Administration ("SSA"). The Court should reverse the SSA's decision and remand for an award of disability insurance payments.

BACKGROUND

Ms. Petzold applied for benefits in 1992, and the SSA denied the application initially and on reconsideration. Administrative Record at pp. 28-29, 65-67, 70-71 (certified May 21, 2007) ("Rec."). An administrative law judge denied benefits,[1] and the Court reversed and remanded.[2]

After the passage of almost nine years, the Appeals Council ordered a remand. *Id.* at p. 47. The second hearing took place over a year later. *See id.* at pp. 221-34. There the

---

[1]      Rec. at pp. 33-38.

[2]      Rec. at pp. 48-61.

administrative law judge found that Ms. Petzold was not disabled at step two.  *See id.* at
p. 22.  The Appeals Council declined jurisdiction,[3] and the present action followed.

In part, Ms. Petzold alleges a failure to properly consider the treating physician's
medical opinion and follow this Court's remand order.  The Plaintiff is correct, and the errors
should lead to reversal and remand for an award of benefits.[4]

## STANDARD OF REVIEW

The Court must determine whether the SSA's decision is based on substantial
evidence and the correct legal standard.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th
Cir. 2005).  If the SSA's decision lacks substantial evidence or is based on an incorrect legal
standard, reversal is necessary.  *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984);
*see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) ("if the [administrative
law judge] failed to apply the correct legal test, there is a ground for reversal apart from a
lack of substantial evidence").

## FAILURE TO PROPERLY CONSIDER THE
## TREATING PHYSICIAN'S OPINION AND
## FOLLOW THIS COURT'S REMAND ORDER

Following the first denial of benefits, this Court concluded that the administrative law
judge had erred by:

---

[3]      Rec. at pp. 4-6.

[4]      The Plaintiff also alleges other errors, but the Court need not address them in light of the
recommendation for reversal and remand for an award of benefits.

- rejecting the diagnosis of chronic fatigue immune dysfunction syndrome ("CFIDS") despite the lack of contrary medical evidence and

- relying on Dr. Folger's incomplete assessment to reject the diagnosis of CFIDS.

Rec. at pp. 48, 61-62.  In light of these errors and others,[5] the Court ordered a remand and instructed the SSA to reconsider the medical opinions.  *Id.* at pp. 48, 61-62.  The administrative law judge failed to apply the Court's instructions and mischaracterized the testimony of the medical expert on remand.

I.     Duty to Comply with the Court's Remand Instructions

"Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."[6]

II.    Consideration of the Treating Physician's Medical Opinion

An administrative law judge must follow a specific process when he assesses medical opinions.  First, the judge must determine whether the opinion qualifies for controlling weight.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (*per curiam*).  This evaluation entails a determination of whether the opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'"  *Id.* (citation omitted).  If not, the inquiry ends.  *See id.*  But if the opinion is well-supported, the judge must confirm that the

---

[5]     The remand order included additional instructions, but they are immaterial to the issues discussed below.  *See* Rec. at pp. 48, 59-62.

[6]     *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989); *see Horrell v. Chater*, 54 F.3d 787, 1995 WL 275704, Westlaw op. at 2 (10th Cir. May 10, 1995) (unpublished op.) (reversing the SSA's determination on grounds that it had contradicted the federal appellate court's prior order).

opinion is consistent with other substantial evidence in the record.  *See id.*  If the opinion is deficient, it is not entitled to controlling weight.  *See id.*  At that point, the administrative law judge must weigh the opinion based on multiple factors[7] and "give good reasons" for the weight assigned to the opinion.  *Id.*  The judge may reject a medical opinion outright only on the basis of substantial contradictory medical evidence.  *See id.*; *see also Kemp v. Bowen*, 816 F.2d 1469, 1474 (10th Cir. 1987) (requiring substantial contradictory medical evidence).  If the judge "rejects the opinion completely, he must . . . give 'specific, legitimate reasons. . . .'"  *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (citation omitted).

III.   <u>The Administrative Law Judge's Rejection of Dr. Griffin's Diagnosis</u>

The Plaintiff was examined by Dr. Carl Griffin in February 1992.  Based on Ms. Petzold's physical and lab work history, Dr. Griffin diagnosed CFIDS.  Rec. at pp. 155-72.

---

[7]     These factors include:

- the length of the treatment relationship and the frequency of examination;

- the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

- the degree to which the physician's opinion is supported by relevant evidence;

- consistency between the opinion and the record as a whole;

- whether or not the physician is a specialist in the area upon which an opinion is rendered; and

- other factors brought to the administrative law judge's attention which tend to support or contradict the opinion.

*See Robinson v. Barnhart*, 366 F.3d at 1082.

In the first decision, the administrative law judge discounted Dr. Griffin's opinion on grounds that the physician had "relied almost entirely on the claimant's statements with regard to her past medical history" rather than "detailed medically-determinable findings." *Id.* at p. 36.

In its remand order, the Court rejected the administrative law judge's analysis, reasoning that Dr. Griffin's opinion should have been given greater consideration because:

- Dr. Griffin had relied in part on lab work and his clinical evaluation[8] and

- "there [was] no 'dipstick' laboratory test for CFIDS."[9]

The Court noted that to make a CFIDS diagnosis, a physician had to engage in:

- testing,

- matching of detailed lists of symptoms,

- review of the patient's medical history, and

- exclusion of other diseases or disorders.

*Id.* at pp. 48, 57.  Concluding that Dr. Griffin had followed this process, the Court held that the administrative law judge had erred in rejecting the physician's opinion without any contradictory medical evidence.  *Id.* at pp. 48, 57-58.

---

[8]     Rec. at pp. 48, 56.

[9]     Rec. at pp. 48, 57.

5

Roughly a decade later, the administrative law judge committed the same mistakes in rejecting Dr. Griffin's diagnosis based on a lack of medical support and made new errors in mischaracterizing the opinions of Dr. Folger and the medical expert.

For example, the judge acknowledged the usual need to diagnose chronic fatigue "by a process of elimination" because of the absence of any specific diagnostic test for the condition. *Id.* at pp. 19-20. However, the judge rejected Dr. Griffin's diagnosis because the physician had not performed "the costly blood work which would support such a diagnosis." *Id.* at p. 21. This conclusion ignored this Court's earlier finding that:

- Dr. Griffin's opinion had been supported by clinical and laboratory tests and

- the opinion could not be legally rejected without a finding of contrary evidence.

*See supra* p. 6.

As this Court noted in its remand order, there are no conclusive tests for CFIDS. *See supra* p. 5.[10] Consequently, the judge lacked any justification for his continued rejection of Dr. Griffin's diagnosis based on a lack of objective tests.

A similar situation arose in *Sisco v. United States Department of Health and Human Services*, 10 F.3d 739 (10th Cir. 1993). There an administrative law judge rejected a treating physician's diagnosis of chronic fatigue syndrome based on a lack of laboratory tests. *See*

---

[10]     Dr. Griffin did not indicate that additional lab work was necessary to diagnose CFIDS for Ms. Petzold. Instead, the physician said that costly blood work was "sometimes" required. Rec. at p. 162.

*Sisco v. United States Department of Health and Human Services*, 10 F.3d at 743-44.  The Tenth Circuit Court of Appeals reversed, noting that the judge had misinterpreted the requirements of "'medically acceptable clinical or laboratory diagnostic techniques'" to mean that a claimant could only prevail if her impairment could be "conclusively diagnosed by a 'laboratory-type' test." *Id.* at 743 (citations omitted).  The court emphasized the absence of any specific test for chronic fatigue syndrome, adding that a claimant's disability need only have been diagnosed through a clinical or laboratory technique. *Id.* at 743-44.  Applying this test, the court concluded that the treating physician had utilized recognized clinical techniques for a chronic fatigue diagnosis and that his opinion was entitled to controlling weight. *Id.* at 744.

The reasoning in *Sisco* is applicable here.  This Court noted that Dr. Griffin had diagnosed CFIDS based on recognized clinical techniques and that his opinion was supported by clinical, physical, and laboratory testing. *See supra* p. 5.  But even with this unambiguous conclusion, the administrative law judge adhered to his earlier rationale without citing any substantial contradictory medical evidence.[11]  Thus, the administrative law judge failed to correct the errors chronicled in the Court's remand order, and reversal is necessary. *See supra* p. 3 (noting that failure to follow a court's remand order constitutes reversible error).

---

[11]     The administrative law judge did rely on the opinions of Dr. Folger and the medical expert. Rec. at p. 21.  However, the reliance on Dr. Folger's report violated the Court's remand order, and the medical expert's testimony did not constitute substantial contradictory medical evidence. *See infra* pp. 8-10.

7

IV.    <u>Impermissible Reliance on the Opinions of Dr. Folger and the Medical Expert</u>

After rejecting Dr. Griffin's diagnosis, the administrative law judge gave controlling weight to the opinions of Dr. Folger and the medical expert.  Rec. at p. 21.  The reliance on these opinions compounded the effect of violating the remand order with respect to Dr. Griffin's opinion.

In 1993, Ms. Petzold was examined by Dr. C. Douglas Folger.  Dr. Folger reported that the Plaintiff had met some of the criteria for CFIDS, but not enough for a firm diagnosis. *Id.* at p. 153.  Dr. Folger believed that before a firm diagnosis could be made, a psychiatrist would need to determine whether depression was causing the symptoms.  *Id.*

In his 1996 opinion, the administrative law judge relied on Dr. Folger's finding that Ms. Petzold had not met all of the criteria for CFIDS.  *Id.* at p. 35.  This Court reversed, concluding that:

- the record was clear that "[Dr. Folger] wanted to rule out primary depression . . . before he made a final diagnosis"[12] and

- "[t]he [administrative law judge] [had] not develop[ed] the record with a consultative examination and evaluation by a psychiatrist."[13]

Consequently, the Court held that the administrative law judge had erred in relying on the opinion.  *Id.* at pp. 48, 59.

---

[12]    Rec. at pp. 48, 58-59 (citation omitted).

[13]    Rec. at pp. 48, 59 (citation & footnote omitted).

8

The administrative law judge failed to comply with the Court's instructions.  In his second decision, the judge acknowledged:  "In [Dr. Folger]'s opinion, it would be difficult to make a firm diagnosis of chronic fatigue syndrome without a psychiatric evaluation . . . ."  *Id.* at p. 19.  But without any additional information, the administrative law judge again relied on Dr. Folger's comment as a basis to reject Dr. Griffin's opinion.  *Id.*  In the prior remand order, the Court concluded that this passage by Dr. Folger did not call Dr. Griffin's diagnosis into question.  *Id.* at pp. 58-59.  The administrative law judge apparently disregarded the Court's discussion and stuck to his original reason for rejecting Dr. Griffin's diagnosis.  *Id.* at p. 21.

Finally, the administrative law judge stated that according to the medical expert, "there was insufficient evidence to support a diagnosis of chronic fatigue syndrome."  *Id.* at p. 21.  This comment mischaracterized the testimony.

The expert actually testified:

> Well, I'm going to disappoint you, Judge, in a way because I cannot tell what she has that is primarily responsible for the fatigue . . . .  What I've got down here is chronic fatigue syndrome versus psychiatric disease versus calcium problems.  And so I, I do not know. . . .  So, I wind up saying with the records, as they stand, I'm not going to be much help on this.  I cannot elucidate what it is that is causing this problem.

*Id.* at pp. 226-28.

The medical expert did not say that there was insufficient evidence to support Dr. Griffin's medical opinion or even that he had found evidence inconsistent with the diagnosis.  Instead, the expert stated that he could not make a diagnosis "with the records[] as they

[stood]." *See supra* p. 9.  This statement does not constitute contrary medical evidence to reject Dr. Griffin's opinion.[14]

Dr. Griffin, a treating physician, diagnosed CFIDS.  *See supra* p. 4.  The medical expert could not confirm the diagnosis, but he did not contradict it or point to contrary medical evidence.  *See supra* p. 9.  Thus, the medical expert's testimony did not justify rejection of Dr. Griffin's diagnosis.

V.    Summary

The administrative law judge erred in rejecting Dr. Griffin's diagnosis and in relying on the opinion of Dr. Folger.  The errors are significant because the Court had specifically remanded on these issues.  The judge compounded these errors by assigning controlling weight to the medical expert's inability to make a diagnosis.  These errors require reversal and remand.

THE APPROPRIATE REMEDY ON REMAND

With the reversal, the Court could remand to the SSA for further hearing or direct an award of benefits to the claimant.  *See Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir.

---

[14]      *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149-51 (9th Cir. 2001) (reliance on a medical advisor's assessment constituted reversible error when the advisor was equivocal and expressed the need for additional information); *see also McSwain v. Chater*, 77 F.3d 492, 1996 WL 78323 (10th Cir. Feb. 23, 1996) (unpublished op.) (holding that the record was inadequately developed when a medical advisor was equivocal and expressed the need for additional information).

1993).  The Plaintiff seeks a remand for an award of benefits.[15]  Two factors strongly support

the request.

First, Ms. Petzold applied for benefits over fifteen years ago,[16] and further delay

would be inequitable.[17]

Second, the agency has already had two opportunities to hear the evidence and render

a legally sufficient decision.  *See supra* pp. 1-2.  After the first decision, the Appeals Council

expressly required consideration of this Court's remand order.  Rec. at p. 47.  Nevertheless,

---

[15]     The Plaintiff remarks that "[i]f there were ever a disability case for punitive damages, this is it."  Brief of Plaintiff at p. 13 (July 12, 2007).  The comment is ambiguous.  If it is intended as a request for punitive damages, the Court should reject the claim.  The Social Security Act does not authorize money damages as a remedy for wrongful denial of disability benefits.  *See Schweiker v. Chilicky*, 487 U.S. 412, 424 (1988) (The Social Security Act, Title II, "makes no provision for remedies in money damages against officials responsible for unconstitutional conduct that leads to the wrongful denial of benefits.").  Thus, courts have disallowed punitive damages as a remedy when disability benefits are wrongfully denied.  *See Talanker v. Barnhart*, 487 F. Supp. 2d 149, 160 (E.D. N.Y. 2007) (holding that punitive damages are unavailable as a remedy for improper denial of supplemental security income benefits); *Ostroff v. State*, 554 F. Supp. 347, 352 (M.D. Fla. 1983) (under Section 405(g) of the Social Security Act, punitive damages are unavailable as a remedy); *Kenney v. Barnhart*, 2006 WL 2092607, Westlaw op. at 5 (C.D. Cal. July 26, 2006) (unpublished op.) ("Thus, while a claimant unhappy with a benefits determination by the SSA may sue in federal court and seek benefits claimed to be owed him, he may not ask for [punitive] damages resulting from the SSA's allegedly incorrect benefits decision.").

Ms. Petzold also seeks "reasonable attorney's fee[s] and court costs."  Brief of Plaintiff at p. 14 (July 12, 2007).  If the Plaintiff prevails, her attorney may file a bill of costs and/or an application for an award of attorney fees.  *See* W.D. Okla. LCvR 54.1 - 54.2 (June 15, 2007).  But such an award is premature at this stage.

[16]     *See* Rec. at p. 14 (noting an application date of May 29, 1992).

[17]     *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993) (award directed when the claim was pending over four years); *Frey v. Bowen*, 816 F.2d 508, 518 (10th Cir. 1987) (award directed when more than six years had passed since the claimant's application for disability benefits).

the administrative law judge failed to correct the errors and committed new ones. "The [SSA] is not entitled to adjudicate a case '*ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion.'" *Sisco v. United States Department of Health and Human Services*, 10 F.3d 739, 746 (10th Cir. 1993) (citation omitted).

The two factors should result in instructions for payment of benefits rather than reconsideration by the SSA.

## RECOMMENDATION

The Court should reverse and remand with directions for the SSA to award disability insurance benefits.[18]

---

[18]     The Plaintiff's brief contains three inappropriate remarks.

First, in urging reversal, the Plaintiff's attorney states that he has not sought a reversal in over twenty years of practice. Brief of Plaintiff at p. 13 (July 12, 2007) ("Not once in over twenty (20) years have I asked for a reversal."). His implication is that the Court should therefore recognize the significance of this case. *See id.* The reference is inappropriate because the attorney's prior practices are irrelevant and he is not being truthful. The attorney has sought reversal many times in the last twenty years. *See*, *e.g.*, Untitled Brief at p. 9, *Schmidt v. Astrue*, Case No. CIV-07-322-R (W.D. Okla. July 5, 2007) (statement by Plaintiff's counsel, one week before the quoted representation in the present case, that he was requesting reversal of the unfavorable decision and a declaration that the plaintiff was entitled to continue receipt of disability insurance benefits past the closure date); Reply Brief of the Plaintiff at p. 9, *Marple v. Barnhart*, Case No. CIV-06-1182-D (May 1, 2007) (statement by Plaintiff's counsel, roughly 2½ months before the representation in the present case, that he was requesting reversal of the "unfavorable decision" and a declaration that the plaintiff was entitled to benefits); Untitled Brief at p. 11, *Miracle v. Barnhart*, Case No. CIV-04-769-W (W.D. Okla. Jan. 28, 2005) (request by Plaintiff's counsel for reversal and a declaration that the plaintiff was entitled to disability benefits); Brief of Plaintiff at p. 22, *Skinner v. Apfel*, Case No. CIV-98-1013-M (W.D. Okla. Nov. 16, 1998) ("prayer" by Plaintiff's counsel for reversal and remand for the payment of benefits); Brief of Plaintiff at p. 18, *Chism v. Apfel*, Case No. CIV-98-761-M (W.D. Okla. Oct. 16, 1998) (statement by Plaintiff's counsel for reversal and remand for the payment of benefits to avoid unnecessary delay); Brief of Plaintiff at p. 13, *Earle v. Apfel*, Case No. CIV-98-39-A (W.D. Okla. Apr. 24, 1998) (request by Plaintiff's counsel for reversal and remand

NOTICE OF RIGHT TO OBJECT

Any party may file written objections with the Clerk of the United States District Court.  *See* 28 U.S.C. § 636(b)(1) (2000).  The objections are due October 15, 2007.  *See* W.D. Okla. LCvR 72.1.  If a party does not file written objections, he would waive any right to appellate review.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also*

_____

for the payment of benefits to avoid unnecessary delay); Brief of Plaintiff at p. 20, *Flowers v. Chater*, Case No. CIV-95-1756-R (W.D. Okla. Mar. 19, 1996) (request by Plaintiff's counsel for reversal and remand for the payment of benefits because further proceedings would have created unnecessary delay); Brief of Plaintiff at pp. 19-20, *Armstrong v. Chater*, Case No. CIV-95-1709-M (W.D. Okla. Feb. 26, 1996) (request by Plaintiff's counsel for reversal and remand for the payment of benefits to avoid unnecessary delay); Brief of Plaintiff at p. 15, *Sparks v. Chater*, Case No. CIV-95-747-T (W.D. Okla. Sept. 8, 1995) (request by Plaintiff's counsel for reversal and remand for the payment of benefits); Brief of Plaintiff at p. 25, *Newberry v. Chater*, Case No. CIV-95-706-T (W.D. Okla. Aug. 24, 1995) (request by Plaintiff's counsel for reversal and remand for the payment of benefits to avoid unnecessary delay); Brief of Plaintiff at p. 15, *Lamb v. Chater*, Case No. CIV-95-540-M (W.D. Okla. July 21, 1995) (statement by Plaintiff's counsel that he was requesting reversal and remand for the payment of benefits); Brief of Plaintiff at p. 21, *Whitaker v. Chater*, Case No. CIV-95-420-L (W.D. Okla. July 7, 1995) (request by Plaintiff's counsel for reversal and remand for the payment of benefits); Brief of Plaintiff at pp. 26-27, *Walker v. Shalala*, Case No. CIV-94-1928-R (W.D. Okla. Mar. 6, 1995) (request by Plaintiff's counsel for reversal and remand for the payment of benefits to avoid unnecessary delay); Brief of Plaintiff at p. 20, *Smothers v. Shalala*, Case No. CIV-92-2398-L (W.D. Okla. Apr. 29, 1993) (request by Plaintiff's counsel for reversal and remand for the payment of benefits to avoid unnecessary delay); Brief of Plaintiff at p. 25, *Henry v. Sullivan*, Case No. CIV-92-1911-R (W.D. Okla. Jan. 29, 1993) (request by Plaintiff's counsel for reversal and remand for the payment of benefits to avoid unnecessary delay); Plaintiff's Reply Brief Memorandum in Response to Defendants' Memorandum Brief in Support of Defendants' Administrative Decision at p. 12, *Chandler v. Sullivan*, Case No. CIV-91-1137-W (W.D. Okla. Mar. 5, 1992) (requesting reversal and remand for payment of benefits to avoid unnecessary delay).

Second, the attorney states that if the Court disagrees with his client's position, it would be "tantamount to sweeping the sins committed here under the rug."  Brief of Plaintiff at p. 13 (July 12, 2007).  The implication is that if the Court ruled against Ms. Petzold, it would be concealing misdeeds by the SSA.  The suggestion is inappropriate.

Third, Plaintiff's counsel uses movie references to ridicule the administrative law judge or Commissioner.  *See* Brief of Plaintiff at p. 12 (July 12, 2007) (arguing a lack of common sense in the Commissioner's actions and commenting: "Bueller? Bueller?").  The demeaning tone is inappropriate.

*Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

STATUS OF THE REFERRAL

The referral is terminated.

Entered this 25th day of September, 2007.


Robert E. Bacharach
United States Magistrate Judge